Argued August 1; decided October 29, 1894; rehearing denied.

## KEENAN *v.* CITY OF PORTLAND.*

[38 Pac. 2.]

TAX SALE—PAYMENT BY CITY WARRANTS—RIGHTS OF PURCHASER—CAVEAT EMPTOR.— One who, under a contract with a city, does work on a street, and receives therefor city warrants drawn on a fund to be raised by an assessment on land abutting on the street, and who, at a sale under the assessment, bids in the land, and surrenders the warrants in payment of his bid, receiving instead a certificate of purchase, buys the land subject to the right of the city to sell it under the assessment; and he cannot recover from the city the amount of the warrants because it had no power to levy the assessment, and the purchaser, moreover, bought at his own risk, without recourse against the taxing power, or the officer who made the sale: *Dowell* v. *City of Portland*, 13 Or. 248, cited and approved.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action against the City of Portland as the successor of the City of East Portland, by consolidation of the two cities, to recover the cost of improving a street. The record discloses that the plaintiffs, S. M. Keenan and Son, built an elevated plank roadway on N Street, in the City of East Portland, under a contract with said city, and received therefrom for such improvement city warrants for three thousand three hundred and forty-nine dollars, drawn on a fund to be raised by an assessment upon the abutting property, under an ordinance of said city which attempted to make such property chargeable with the cost of the roadway; that the plaintiffs collected one thousand and thirty-one dollars, upon said assessment, and default having been made in the payment of the balance by the owners of the property claimed to be liable therefor, such property was by order of the common council sold, subject to redemption,

* Publication has been delayed pending a decision on the application for a rehearing.—REPORTER.

and the plaintiffs becoming the purchasers, surrendered the warrants to the city, and received a certificate of sale in lieu thereof; that W. S. Ladd, whose property had been sold to satisfy said delinquent assessment, obtained a decree canceling said assessment, and perpetually enjoining the chief of police of the City of Portland from executing deeds to the plaintiffs on account of said sales: *Ladd* v. *Spencer,* 23 Or. 193 (31 Pac. 474); that the assessment of said property was so imperfectly made that no lien attached thereto, and the plaintiffs, having failed to obtain deeds therefor, brought this action, which by agreement of the parties was tried by the court without a jury, resulting in a judgment for the plaintiffs for the amount claimed with interest, from which judgment the defendant appeals.                                        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Jarvis V. Beach.*

For respondent there was a brief by *Messrs. Fred L. Keenan* and *Watson, Beekman and Watson,* and an oral argument by *Messrs. Keenan* and *Edward B. Watson.*

Opinion by MR. JUSTICE MOORE.

It is contended on the part of the defendant that, conceding the plaintiffs had a remedy against the city for its failure to collect the assessment, they having voluntarily purchased the property at its sale for the delinquent assessment, and having surrendered their warrants, are without remedy if the title they bargained for fails; while the plaintiffs' counsel maintain that their clients were creditors of the city, that they purchased the property to satisfy their claim, and that, the proceedings having been declared void, and the issuance of deeds enjoined, their claim was not satisfied by such sale, and

they can pursue their remedy against the city for its failure to collect the fund. The doctrine is well established that the purchaser at a city tax sale takes the whole risk, and, in the absence of any statutory remedy, can recover nothing from the city if the title proves bad. The rule of *caveat emptor*, in the absence of fraud, applies to prevent such purchaser from recovering his purchase money from the city unless the charter authorizes a repayment. It is thus made the duty of every person, before purchasing real property at a sale thereof for delinquent assessments or taxes, to examine the proceedings by which the authority is derived to make the sale, and if he then purchases any of the property offered for sale he does so on his own judgment, and if he gets no title thereby he has no remedy against the taxing power nor against the officer making the sale: *Dowell* v. *Portland,* 13 Or. 248 (10 Pac. 308); 2 Blackwell on Tax Titles (4th ed.) §§ 1005, 1006.

The charter of East Portland not having any provision for the repayment of the purchase money, it follows that if the property had been purchased by a stranger to the proceedings he could have no remedy against the city upon failure of title; but the charter having provided that deeds should be executed to the purchasers if no redemption were made within three years from the date of sale, and the chief of police of Portland having been perpetually enjoined from executing deeds to the plaintiffs, their counsel contend that the execution and delivery of the deeds having been a part of the contract of purchase, they are entitled to a repayment of the purchase money upon such failure to complete the sale. In support of their contention they cite the case of *Phillips* v. *City of Hudson,* 31 N. J. L. 143, in which it was held that so long as a contract for the sale of land is executory only the purchaser is entitled to

have a good title, unless the contrary is expressly or impliedly agreed upon; but where the bargain is consummated by the delivery and acceptance of a deed, the purchaser must look to the covenants he has taken care to have provided, and in the absence of fraud has no right to relief either at law or in equity for defects of title, except as such covenants affect it. Mr. Rawle, in his work on Covenants for Title, pages 42 and 565, in substance says that while the contract is executory the purchaser of real property has the right to demand a title clear of defects and incumbrances, and this right does not depend upon the terms of the contract, but is given by the law.

There is no sale in a legal sense until the title has passed (*Settlemire* v. *Newsome,* 10 Or. 446), and hence the purchase of the property in the case at bar was but an executory contract. The question then arises, could the plaintiffs, after they had paid the purchase price, rescind such a contract because of a failure of the title? In *State* v. *Inhabitants of Piscataway,* 43 N. J. L. 353, the court, in an action to annul a tax sale in order to prepare the way for a suit to recover the purchase money paid on the sale, said: "The rule of law applicable to such a case is that the municipality is under no obligation to refund the purchase money because the tax title fails; the purchaser is a volunteer and buys at his own risk," thus showing that while the rule announced in *Phillips* v. *City of Hudson,* correctly stated the law as applied to private sales between vendor and vendee, its correctness may well be doubted when applied to sales of real property for delinquent assessments or taxes. In all cases where the rule of *caveat emptor* applies, the purchaser, from the very nature of the transaction, necessarily buys at his own risk, and cannot detain the purchase money on account of incumbrances or defects of title: *Friedly* v.

*Scheetz,* 9 Serg. and R. 161.   If he cannot detain the pur-
chase money under such circumstances, he certainly can-
not recover it back after he has parted with it under the
belief that he is thereby obtaining a title.   If the title
prove bad after the deed is executed the purchaser is
without remedy, and he can be in no better condition
when the discovery is made between the date of his pur-
chase and the time when he would become entitled to a
deed.   His contract was to accept such title as the tax-
ing power could give, and if no title can be given, he
thereby suffers a hardship for which there is no legal
remedy.

But the plaintiffs contend that the rule of *caveat emptor*
does not apply to their purchase, and that, having cred-
ited the amount of their bid upon their claim against the
city, they can vacate the apparent satisfaction and pro-
ceed anew to enforce their demand.   It cannot be con-
ceded that the plaintiffs were creditors of the city.   They
had accepted warrants drawn against a special fund to
be raised by an assessment of the property, and the city
could become liable only by its failure to put the neces-
sary machinery in motion to raise and collect the fund:
*Commercial National Bank* v. *Portland,* 24 Or. 188 (41 Am. St.
Rep. 854, 44 Am. and Eng. Corp. Cas. 486, 33 Pac. 532).
How then can it be said that they were creditors of the
city when its liability was only an implied one, and con-
tingent upon its neglect to put the necessary machinery
in motion ?   It was supposed the city had a lien upon the
property by virtue of its proceedings and upon its sale,
and the plaintiffs, having become the purchasers, surren-
dered their warrants for the certificates of sale.   They
were not obliged to purchase the property, and, having
done so, their purchase and the surrender of their war-
rants must be considered voluntary.   They had no judg-
ment against the city which was apparently satisfied by

a levy and sale of property. They could not have recovered money paid upon a sale of the property, and we fail to see how they can be placed in any better position because instead of paying money they exchanged their warrants for the certificates of sale. In *Packard* v. *New Limerick,* 34 Mo. 266, warrants upon a special fund had been surrendered upon the purchase of property assessed for a local improvement, and in an action to recover the value of the warrants because of a failure of the title to the lands purchased, it was held that the plaintiffs could not recover, and that to hold otherwise would, upon principle, make the town responsible to every purchaser of lands sold for the collection of its taxes, if the title should fail; and that the mode of payment by exchanging the warrants could not vary the legal rights of the parties or impose upon the town a responsibility it never assumed. The record of the council's proceedings was public and open to inspection, and the plaintiffs are presumed to have purchased with notice of the defects which rendered the assessment void, and, having voluntarily surrendered their warrants with notice of these defects, they can have no remedy against the city for a failure of the title, and hence the judgment is reversed, and the cause remanded for such further proceeding as to the court below may seem just and proper and not inconsistent with this opinion.

REVERSED.

Decided at PENDLETON, July 20, 1895.