## GASTON *v.* PORTLAND.

[69 Pac. 34, 445.]

VOID SALE OF LAND CONDEMNED FOR STREETS.

1. Where an owner of property, a part of which had been condemned for a street, had been awarded damages in excess of benefits, a sale of an uncondemned part of such property for an assessment for the improvement was void.

ESTOPPEL BY ACCEPTING BENEFITS—OPENING STREETS.

2. Property had been condemned for a street, and damages awarded the owner in excess of benefits to abutting property. A part of the latter property was illegally sold for a benefit assessment, and warrants drawn in favor of the owner on the fund created by this sale and other assessments for the amount of her damages. *Held,* that the owner could accept her award out of the fund created, without impairing her remedy for the recovery of the property wrongfully sold.

EFFECT OF ERROR IN WARRANT TO PAY FOR CONDEMNED LAND.

3. Under Laws, 1898, p. 147, § 117, which provides that as soon as the appropriation to pay the assesed damages shall be in the city treasury, subject to the warrants in favor of the owners of condemned property, and the warrants drawn and ready for delivery, private property shall be deemed appropriated for street purposes, and not otherwise, an error in drawing warrants in favor of a property owner for an amount greater than that to which she was entitled did not nullify the entire proceedings, so as to prevent the appropriation of the property, as her rights had been fully protected, and she could take so much of the fund as she was entitled to.

VOID SALE FOR BENEFITS OF STREETS—DAMAGES—INJUNCTION.

4. Where a sale of property for an assessment for the opening of a street has been at the suit of the owner declared void, she cannot, in a subsequent suit to enjoin the opening of the street on the ground of illegality of the proceedings, recover her expenditures in having the sale declared void.

From Multnomah: ARTHUR L. FRAZER, Judge.

The City of Portland, intending to open Main Street, in Amos N. King's Addition thereto, from its western terminus to an intersection with King Street, a distance of 120 feet, more or less, instituted proceedings under its charter for that purpose. The plaintiff, Mary W. Gaston, is the owner of the property through which it is proposed to extend the street, and also of block No. 11, bordering and coterminus on its western boundary with the street as dedicated. The viewers appointed by the common council to assess the benefits and damages to property holders affected assessed the benefits to

plaintiff upon her property as follows: The south half of
block 11, $402; a tract lying north of and adjoining the pro-
posed extension, $233; and a tract lying south, $120, aggre-
gating $755,—and assessed her damages at $3,070, thus giving
her damages over benefits in the sum of $2,315. The costs
attending the proceedings were found to be $128, which,
added to the damages amounted to $3,198. The benefits
assessed against the property affected, including those as-
sessed to plaintiff, equaled this latter sum, exactly. Not
being satisfied with the award of the viewers, plaintiff ap-
pealed to the circuit court, and on April 10, 1900, obtained
a judgment for $2,662.50 damages over all benefits; and,
having thereby increased her award, she was entitled to
costs and disbursements on the appeal, which were taxed
at $135.80. Notwithstanding the disposition made of the mat-
ter in the circuit court, a warrant was issued by the auditor
on the assessment of benefits, by virtue whereof the chief of
police sold the south half of block No. 11 to H. E. Noble for the
amount of such assessment, which was turned into the city
treasury, and went, with other collections, to make up the fund
for the extension of Main Street, by which it is known in the
proceedings. Of this fund there was collected and put into
the treasury $3,192.50, and on April 18, 1900, that sum was
appropriated by ordinance to the payment of damages and
costs, and warrants were authorized to be drawn against it in
favor of the persons entitled thereto. One warrant (No.
14,239) for $128 (being costs of the proceedings) has been
drawn, leaving in the fund $3,064.50. On August 2, 1900,
the mayor and auditor drew a warrant covering the whole
of the balance payable to plaintiff, and another upon the street
and sewer fund for $51.03 (being for interest), and she was
notified that the same had been drawn in payment of the judg-
ment rendered in her favor against the city, and were then
in the auditor's office subject to her order. These warrants
she never called for, and when the city attempted to open up
the street she commenced this suit to restrain it from further

action in the premises. The trial court rendered a decree dismissing the complaint, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Seneca Smith.*

For respondent there was a brief over the names of *Joel M. Long, Ralph R. Duniway,* and *Bernstein & Cohen,* with an oral argument by *Mr. Duniway.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

Two questions arise: *first,* whether the plaintiff could safely and lawfully draw her award from the fund thus created by the city; and, *second,* whether the appropriation of the fund and the issuance of the warrants (they being in excess of her award) were operative and effective as the final and requisite acts under the charter to accomplish the appropriation of her land.

1. The award of the court on the appeal being for plaintiff's damages, in excess of all benefits received by her, relieved the south half of block 11 from the lien of the assessment for benefits. Henceforth the city had no claim under such lien, and the property was wrongfully sold to enforce it.

2. If $402 be taken away from the fund remaining in the treasury, after deducting the warrant for $128, there would remain but $2,662.50, the exact amount of plaintiff's judgment in the circuit court, less her costs and disbursements on appeal; so that it would be insufficient to pay her demand by $135.80. Now it is urged that plaintiff could not draw from the fund the amount of her judgment and costs, namely, $2,798.30, without impairing her remedy for the recovery of the south half of block 11, wrongfully sold. It is plain that, if she drew the full amount of her judgment, she would absorb a part of the $402 realized by the city from the sale of her own property, and put into the fund. Would this estop her from insisting upon the invalidity of the sale? Manifestly, the maxim *caveat emptor* applies as to Noble. He took the title at his own risk, and could have no recourse upon the city,

under whose authority the sale was made, as it could not be held as a guarantor; nor could he be subrogated in any manner to the claim of the city against plaintiff for benefits, even if it was entitled thereto: *Dowell* v. *City of Portland*, 13 Or. 248 (10 Pac. 308); *House* v. *Fowle*, 22 Or. 303 (29 Pac. 890); *Whiteaker* v. *Belt*, 25 Or. 490 (36 Pac. 534); *Keenan* v. *City of Portland*, 27 Or. 544 (38 Pac. 2). If, however, the plaintiff would estop herself from reasserting title by taking her damages, Noble would be secure from attack, and it would not matter to him that all recourse was cut off as against the city. Either the plaintiff must be permitted to refuse to accept the fund, and thereby defeat the appropriation of her property sought to be condemned, or her acceptance will not estop her to recover the property unlawfully sold. The city cannot condemn her property in one direction, and sell other of her property to create a fund to pay for that which is condemned. Such a course would result in confiscation by indirection.

The estoppel must proceed, if at all, from a ratification of the sale on the part of the plaintiff by acceptance of the purchase price, or part of it, knowing the sale to be invalid. She has done nothing to mislead the purchaser, or to cause him to pursue a different course from that which he would otherwise have done, because of which it would be inequitable to permit her to assert her rights. The city is, however, in her debt, and proffers the fund thus accumulated in payment thereof. the city its equivalent. The city is under no obligation to refund to Noble, as he has no recourse, having purchased at his own risk; and why should a disbursement of the money to plaintiff, as a creditor of the city, work a ratification of the sale in his favor? She takes nothing from Noble, either directly on indirectly, in satisfaction of anything that is her due from him, or, in any sense, in recognition of the purchase; and it is of no consequence to her from what source the fund is accumulated, as long as she does not become a *particeps criminis* to an unlawful or wrongful act herself, and so long as the purchaser takes with his eyes open, and she does nothing to induce him to part with his money, or does not enter into collusion in any way with the city whereby to raise the fund.

She is in no sense the guardian of the city, to see that it does right or proceeds legally in providing the fund by which to compensate her for property lawfully taken, and she can be accused of no wrongdoing simply because she takes of the fund provided for her payment. Nor could the city be lawfully restrained from the payment of the amount of her award under the warrants issued. They are lawful to that extent, and the payment would be lawful. We hold, therefore, that she could safely accept her award out of the fund created, without risk of ratifying the sale to Noble, or jeopardy of incurring liability for wrongdoing.

3. The second question involves a construction of section 117 of the city charter (Laws, 1898, p. 147), by which the common council is required at the expiration of the time limited for appeal, or, if taken, immediately after judgment, to make an appropriation for the amount of damages and costs assessed or adjudged, and direct warrants to be drawn on the treasury, payable out of the fund to be provided for that purpose, for the amount thereof, in favor of the owner or owners of each lot or part thereof to be condemned; and as soon thereafter as the full amount of the appropriation shall be in the city treasury, subject to such warrants, and the warrants therefor drawn and ready for delivery to the persons entitled thereto, such property shall be deemed appropriated for street purposes, and not otherwise; the appropriation to be made, the warrants drawn and ready for delivery, and the full amount of the appropriation to be in the city treasury, subject to the payment thereof, within six months after the termination of the time limited for appeal, or from the date of the rendition of judgment in the circuit court, otherwise the proceedings to become null and void. There seems to be no vague or double meaning in the language employed as to when the appropriation of the property condemned will take place, and the city be entitled to enter. The charter, *proprio vigore,* makes it at once when the conditions are fulfilled, and no other act or condition is necessary. We do not understand that the appellant questions the constitutionality of the method adopted

whereby to accomplish the purpose. She merely challenges the acts of the common council and the officers of the city as not conforming to the charter requirements, in that the appropriation and the warrants were made, and were for a larger sum than she was lawfully entitled to receive. The object of the charter is to secure the owner just compensation for property taken without his consent, and against his will and wish. It takes the place of a tender, and stands in its stead, and should be as safe and certain, and attended with no hazard, contingency, or casualty; and there must be a sure and adequate fund provided, to which the owner may resort. Payment into court of damages assessed have been held in this state to be sufficient: *Oregonian Ry. Co.* v. *Hill,* 9 Or. 377. This is so held because the depository is safe, and, when the money is placed therein, it is beyond the retraction of the appropriator, and nothing is left for the owner whose property has been taken but to demand and receive his compensation.

His case under the charter differs from that but slightly. The appropriation of the money must be made by the common council, the fund created, the warrant drawn, and the money actually in the fund, before the appropriation of the property for public use is accomplished. When all this is regularly attended to, there is nothing left, except for the owner to take down the amount of compensation. There would seem to be no contingency or hazard attending the matter. The city plights its faith for payment; and, not only this, it sets aside a fund, supplies it with means, and directs the owner, by warrant, to take out of it his award. We have treated of the manner in which the money was put into the treasury, and have seen that plaintiff could make no valid objections on that account. That the appropriation and the warrants were for more than plaintiff's award for damages, with costs added, and therefore for more than she was entitled to, do not conflict in any degree with the object of the charter to secure to her the compensation first assessed. It is amply secured, as she may go and take of the fund all of that to which she is entitled, and there is nothing to deter and hinder her. This be-

ing so, why does not the appropriation of her property for public use follow, notwithstanding the authorities have appropriated a larger sum, and tendered her warrants for more, than is justly due her? It is suggested that she might be enjoined from drawing the fund. This might and would, we think, be so, respecting the overplus, as she has no right whatever to that, but not as to the amount to which she is lawfully entitled; and the warrants are just as effective to enable her to draw that amount as though it was stated exactly therein. We do not think this error in making the appropriation and drawing the warrants, whether it be clerical or by misapprehension of the authorities in directing the course of the procedure, is fundamental or vitiates the proceedings *ab initio*. All of plaintiff's inherent and constitutional rights have been safeguarded by the course pursued, and the appropriation of her property was perfected by the procedure. The decree of the trial court will therefore be affirmed. .     AFFIRMED.

Decided 7 July, 1902.

ON MOTION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

4. By the petition for rehearing herein it is insisted that the city, by its unlawful act in selling the property of the appellant, caused an additional expense to her of $100 or more, arising from the litigation made necessary in procuring the annulment of the sale. But that expense bears no relation to the present controversy. The cause of suit giving rise to it is entirely separate and distinct from this. Besides, having prevailed therein, it must be presumed that she has been justly and fullly recompensed for her costs and disbursements, together with all damages sustained by the city's wrongful acts in that direction. So that there is no possible claim by which she should be reimbursed in that sum, nor does it afford any reason why the city should not prevail in this proceeding. The petition for rehearing is therefore denied.

REHEARING DENIED.