SAMUEL D. DICKINSON, PLAINTIFF IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON ET AL., DEFENDANTS IN ERROR.

Argued November 28, 1904—Decided March 6, 1905.

1. The act entitled "An act to provide accommodations for the courts and county offices in counties of this state and to authorize the issue and sale of bonds therefor," approved March 22d, 1904, is unconstitutional.
2. Where population is made the basis of the classification of counties for legislative purposes, a law based thereon, which excludes from its operation any county shown to be within the class, by any legally ascertained enumeration of the people, is special.
3. The act entitled "An act to facilitate in the acquirement of lands and the erection of buildings for county purposes," approved March 19th, 1901, is constitutional.
4. A section in a general act repealing all acts and parts of acts inconsistent with such act, and containing a proviso which preserves existing conditions, contracts and obligations, and authorizes their completion and enforcement under existing laws, does not make such act special within the constitutional inhibition against special laws contained in article 4, section 7, paragraph 11, of the constitution.

On error to the Supreme Court. For opinion, see *ante p.* 159.

For the plaintiff in error, *George L. Record* and *William H. Speer.*

For the defendants in error, *Gilbert Collins, William D. Edwards* and *John J. Mulvaney.*

The opinion of the court was delivered by

FORT, J. The writ in this case brings up for review a judgment of the Supreme Court affirming the proceedings of the board of chosen freeholders of the county of Hudson, looking to the erection of a new court house.

There are three statutes authorizing the erection of court houses by counties.

They are (1) "An act to facilitate the acquirement of lands and the erection of buildings thereon for county purposes," approved March 22d, 1900 (*Pamph. L., p.* 190) ; (2) an act with the same title, approved March 19th, 1901 (*Pamph. L., p.* 79) ; and (3) "An act to provide accommodations for the courts and county offices in counties of this state, and to authorize the issue and sale of bonds therefor," approved March 22d, 1901 (*Pamph. L., p.* 272).

There are two amendments to the act approved March 19th, 1901; one approved March 18th, 1902 (*Pamph. L., p.* 42) ; the other approved April 3d, 1902 (*Pamph. L., p.* 369).

There was but a single contention on the argument, namely, that all of these statutes are unconstitutional and afford no support for the proceedings under review.

It is apparent, indeed it was admitted by the defendants in error, that the action taken by the chosen freeholders of Hudson, had been carefully advised in order to sustain it if either statute above cited was a valid enactment.

The Supreme Court declared the act of March 22d, 1901, to be constitutional, and sustained the proceedings under that act. With this view we are unable to agree.

The last clause of section 10 of the act reads as follows: "Nor shall it [the act] apply to the counties having a population, ascertained by the last preceding national census, of less than two hundred thousand inhabitants."

We think this restriction makes the act special, and hence within the interdiction of the constitutional mandate that "the legislature shall not pass private, local or special laws * * * regulating the internal affairs of towns and counties." *Const., art.* 4, § 7, ¶ 11.

"Towns," as used in this clause in the constitution, embraces cities, boroughs, towns, villages and townships. *Van Riper* v. *Parsons,* 11 *Vroom* 1.

And this court has held that legislation is general within this clause, which embraces the whole of any of these *species* of the *genus* towns. *Hermann* v. *Guttenberg,* 34 *Vroom* 616.

A law may also be a general law when based upon population, or otherwise, even where it only applies to a part of the cities or towns or villages or boroughs or townships of the state, if it appears that the classification upon which it is based has a reasonable relation to the municipalities which it includes, as contradistinguished from those which it excludes. *Randolph* v. *Wood,* 20 *Vroom* 85; *S. C.,* 21 *Id.* 175; *Freeholders of Hudson* v. *Clarke,* 36 *Id.* 271.

The word "counties" in the clause of the constitution above quoted embraces no other governmental creations except such as are known as counties. Hence there can be no classification of counties, for legislative purposes, on the basis of population or otherwise, in matters relating to their structure, machinery or powers, unless it is apparent that the basis used for classification has some reasonable relation to the necessities of the counties so classified, as contradistinguished from the other counties of the state. *Freeholders of Hudson* v. *Clarke, supra.*

It will be noted that the last clause of section 10 of the act under consideration limits the act to counties having the designated population "by the last preceding *national* census." We have a law in our own state for a decennial census. The census taken under that act is a legal ascertainment of the

population of the counties, cities and other municipalities of the state, as well as of the population of the whole state.

The legislature cannot say that a county having the required population, by a legally ascertained census, taken under our own laws, shall not be within the class, but shall only so be when shown so to be by a census taken under *national* authority.

Where population is made the basis of classification for legislative purposes, a law based thereon, which excludes from its operation any county shown to be within the class, by any legally ascertained enumeration of the people, is special.

It would be difficult to sustain a contention that an act would be general if it excluded from its classification any county or municipality shown by a national census to have the population required by the act. The constitution of the United States provides for an enumeration of the people every ten years. Article 1, section 2.

By an act entitled "An act to provide for the census or enumeration of the inhabitants of this state," approved April 7th, 1885, it was enacted "that an enumeration of the inhabitants of this state, and of each county, town and township thereof, shall be taken during the present year, eighteen hundred and eighty-five, and during every tenth year hereafter, under the direction of the secretary of state." *Gen. Stat., p.* 365.

By a supplement to the general act for the classification of cities, approved April 2d, 1891, it is provided: "That whenever a census has been or shall be taken by national or state authority, the same shall take effect and be applicable to the cities enumerated in the act to which this is a supplement ninety days after the promulgation thereof." *Gen Stat., p.* 549. The general classification act for counties, on the basis of population, is in similar terms with that for cities. *Gen. Stat., p.* 420 (General County Classification act); *Gen. Stat., p.* 458 (General City Classification act).

After the passage of the supplement of April 2d, 1891, to the general act for the classification of cities, above referred to, the Supreme Court determined that the population referred

to by the general act relating to cities, irrespective of the supplement of 1891, meant the population as legally ascertained.

Mr. Justice Magie says: "If the question presented was limited to the construction of the original classification act, I think the solution not difficult. * * * It is apparent that 'population' in this act bears the meaning of the enumeration of the inhabitants, and refers to such enumeration as the law provides to be made. Two such enumerations are provided by the law in each decade, one under United States authority and the other under the laws of this state." *In re Sewer Assessment for Passaic,* 25 *Vroom* 156.

If the legislature may provide a classification excluding an enumeration of the people, required by the laws of our own state, why may it not, with equal propriety, say that the population fixed by a statute, as a basis of classification, shall only be operative in the counties within the act, as such population may be ascertained by every *second* national census?

Each county has the right to come within the class after it has been shown by any legal enumeration of the people to contain the required population.

An act which excludes counties shown to have the population required by it, by a census taken under our state law, is a special act and void.

Is the act approved March 19th, 1901, also unconstitutional?

This act is general in terms and is applicable to all the counties of the state. The contention is that this act is unconstitutional, because of section 5, which reads as follows:

"All acts and parts of acts inconsistent herewith are hereby repealed; *provided, however,* that in any county in this state where a building commission has, before the passage of this act, been appointed for the purpose of building the buildings hereinabove mentioned, nothing herein contained shall be construed to prevent or hinder or in any way interfere with said commission from proceeding with the work for which such commission was appointed the same as though this act had not been passed."

At the time the act of March 19th, 1901, was passed, two acts for the construction of court houses by counties had been previously enacted, namely, the act of March 22d, 1900 (*Pamph. L., p.* 190), and the act approved March 22d, 1895 (*Pamph. L., p.* 575).

The act of March 19th, 1901, is practically a re-enactment of the act of March 22d, 1900. There are but three or four slight differences in the text of the two laws.

The object of section 5 of the act of March 19th, 1901, evidently, was to retain the *status* existing at the time of its passage owing to any proceedings taken under previously enacted statutes. If a commission had already been appointed under some other act to do the very thing authorized by the act of March 19th, 1901, this statute was not "to prevent, hinder or in any way interfere with said commission from proceeding with the work for which such commission was appointed the same as though this act had not been passed." The effect of this was to prevent interference with existing operations for the construction of court houses, but to provide that in the future all county court buildings, other than those already in process of erection, should be erected only under the act of March 19th, 1901.

An act is not inimical to any constitutional inhibition which conserves existing conditions, contracts and obligations, which have been entered into or incurred under previously enacted statutes.

Our act with relation to statutes, approved March 27th, 1874, contains this clause: "That the repeal of any statutory provision * * * by any act of the legislature hereafter passed shall not affect or impair any act done or right vested or accrued * * * before such repeal shall take effect; but every such act done or right vested or accrued * * * shall remain in full force and effect to all intents and purposes as if such statutory provision so repealed had remained in force." *Gen. Stal., p.* 3194, § 27.

The reservation in section 5 of the act of March 19th, 1901, would not interfere with proceedings to build a new court

house in any county in the state, in which a court house was not in the process of erection, if the board of freeholders should adopt a resolution declaring the court house and buildings in use for public offices to be inadequate. Section 5 does not enact that the act shall not be applicable to any county in which a new court house is now being constructed. If it did, that might raise another question, namely, whether the act was not special because it was not applicable to such counties even in case of future needs. But such is not the effect of the proviso. It enacts nothing affirmative; it simply declares that the repeal of all prior statutes shall not operate to prevent, hinder or interfere with an existing commission in concluding its work already undertaken.

Such a provision for preserving an existing *status* is found not only in the general act relating to statutes above quoted, but will be found in many, if not in all, the repealers accompanying the various revisions adopted by the legislature for the past ten years.

A few such acts are here referred to, and it has not been suggested that such provisions made these acts special.

In the laws of 1898 (*Pamph. L., p.* 338, § 233), "Elections and Election Officers in Municipalities;" *Id., p.* 556, § 15, "Mechanics' Liens;" *Id., p.* 638, § 221, and *p.* 643, § 5. "District Courts in Cities;" *Id., p.* 711, § 98, "Conveyances;" *Id., p.* 855, § 222, and *p.* 865, §§ 2, 3, 4, 5, "Crimes;" *Id., p* 929, § 179, and *p.* 941, § 5, "Criminal Procedure;" *Id., p.* 969, § 31, and *p.* 970, § 2, "Children;" Borough act (*Pamph. L.* 1897, *p.* 329, §§ 96, 97); *Pamph. L.* 1899, *p.* 412, §§ 94, 95, "Townships;" Tax act repealer (*Pamph L.* 1903, *p.* 446, § 2); Public education act (*Pamph. L.* 1902, *p.* 167, §§ 248, 250), and many other statutes on all subjects.

We think the act of March 19th, 1901, is constitutional.

As the commission appointed in Hudson county and its proceedings here under review appear to be within the act of March 19th, 1901, the constitutionality of the act of March 22d, 1900, need not be considered.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, SWAYZE, VREDEN-BURGH, VOORHEES, VROOM, GREEN.   11.

*For reversal*—None.