WALTER CHRISTIE ET AL., RELATORS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN ET AL., RESPONDENTS.

Argued February 25, 1907—Decided June 10, 1907.

1. Where a county building committee has been appointed by the chosen freeholders of any county pursuant to the act of 1901, as amended by the act of 1902 (*Pamph. L.* 1901, *p.* 79; *Pamph. L.* 1902, *p.* 42), and such committee has incurred obligations for lands or building construction, it is lawful for the chosen freeholders to raise the necessary funds to cover such expense by the issuance of bonds, as provided by statute, and in default, a *mandamus* will issue so directing.
2. Under the act of 1901 the building committee, when appointed, have the authority to erect a county jail.

3. The provisions of the act of 1903 (*Pamph. L.*, *p.* 47) do not apply to a change of site for the location of county buildings at the county seat, but only to a change of the county town or seat itself.

On rule to show cause why a *mandamus* should not issue.

Before Justices FORT, HENDRICKSON and PITNEY.

For the relators, *Wendell J. Wright* and *Edmund W. Wakelee.*

For the respondents, *Luther A. Campbell* and *Peter W. Stagg.*

The opinion of the court was delivered by

FORT, J.    This is an application for a *mandamus* to compel the issuance by the respondents of county bonds to meet the cost of the purchase of land and the erection of public buildings for the county of Bergen.

The freeholders of that county heretofore appointed a committee for the purpose of erecting public buildings in such county under the act of 1901, as amended by the act of 1902. *Pamph. L.* 1901, *p.* 79; *Pamph. L.* 1902, *p.* 42.

These proceedings were questioned and affirmed in this court and in the Court of Errors and Appeals. *Gulnac* v. *Freeholders,* 45 *Vroom* 543.

The constitutionality of this act was sustained by the Court of Errors and Appeals. *Dickinson* v. *Hudson County Freeholders,* 42 *Vroom* 589.

The building commission appointed pursuant to statute have entered upon the discharge of their duties and have incurred expenses in securing the site and employing experts and for the services of a consulting engineer, and the like, amounting to several hundred dollars, and they have also made requisition upon the board of freeholders for funds for the purchase of a site which they have selected for the erection

of the county buildings within the town of Hackensack, which is the county seat.

The board of freeholders, by a vote of six to eighteen, have refused to issue bonds in accordance with the statute, to provide the necessary funds to meet the requirements of the appointed building committee.

This proceeding is to test the right of the county commission to require the freeholders to issue the bonds and to provide the necessary funds.

No technical points are made by counsel, but the broad claim is made by the respondents that the matter of furnishing the funds requisite for the county buildings which the county building commission proposes to construct is discretionary with the board of freeholders, and that, if they refuse to furnish the funds, no buildings can be erected.

We think otherwise. After the statutory proceedings have been taken for the selection of the county commission, and the commission has been appointed, the power of the chosen freeholders under the statute is ended and all duties then devolve upon the county commission. They are given power to acquire by purchase or condemnation lands suitable for the erection of the necessary buildings, to be used for the courts and county officers, and for the transaction of the public business of the county, and to furnish the same ready for occupancy and use by such courts and public officers. Title is to be taken in the name of the freeholders. Among other things, they are authorized to employ architects and to execute all necessary contracts and agreements in the name of. the freeholders and to incur "any proper and necessary expense in carrying out the provisions of this act." And by the fourth section of the act of 1901, as amended by the act of 1902, it is provided that it shall be lawful for the board of chosen freeholders of such county to issue and sell the bonds of such county corporation for the purpose of raising the money to pay the cost of lands and buildings and furnishing the same, according to the provisions of this act, to an aggregate amount not exceeding one and one-half per centum of the total assessed value of the real and personal property in such county. The

bonds are to run for forty years and to be sold for not less than par, and it is made the duty of the chosen freeholders to establish a sinking fund to meet the bonds at maturity, and also to enter in the county tax levy a sum sufficient to pay the interest on the bonds.

It is argued that the words, "it shall be lawful," in the fourth section of the act, are words of discretion and not mandatory upon the board of freeholders as to the issuance of bonds. This view does not commend itself to our judgment when the history of the statute is considered. The act provides for a scheme for the erection of county buildings and authorizes the commission, when appointed pursuant to the statute, to do the things in relation thereto above enumerated. To meet these obligations, in order to justify the board of freeholders in doing it, the statute provides that "it shall be lawful" for the board to issue and sell bonds. Of course, but for this there would be no power in the board of freeholders to issue the bonds.

The statute gives the unquestioned power to the county commissioners to incur obligations in the name of the county of the character mentioned above. To meet these it is the duty of the freeholders to provide the funds, and the statute points out the method in which it shall be lawful for them to do so. There is no discretion in the board of freeholders with respect to this matter. The duty is cast upon them to provide the funds to meet the engagements which the statute authorizes the commission to incur. Any other construction of this act would lead to this anomaly: that the county commission could incur expenses which there would be no way to pay unless the duty upon the board of freeholders to meet the obligations thus incurred was a mandatory one.

Another point was made. It is conceded that the money in this case is desired to purchase land in the town of Hackensack, which is the county seat of Bergen county, at a different location in that town from that upon which the present county buildings are situated. The record shows the reason for the taking of this course by the commission in a full and satisfactory report found therein. The contention is that this

is a change of location of the county buildings within the provisions of the act of 1903 authorizing the change of the location of the county buildings for the use of the courts and public officers of the county and acquiring land, &c. (*Pamph. L.* 1903, *p.* 47), and that this change of location must be voted upon by the people in order to justify the expenditure therefor. We do not so construe the act of 1903. We think that act is limited in its operation and effect to the selection of a new location for county buildings, and by that is meant a change of the county seat from one town to another in the county, and that it does not relate to the purchase of a different piece of land within the territory of the municipality which is now designated by law as the county seat of any county in this state.

It is also suggested that the act of 1901, as amended by the act of 1902, does not cover the erection of a county jail, as it is suggested the relators intend to do in this case. We think that it does cover any county buildings to be used for county purposes, and a jail is within this description.

It is stipulated in this case that the assessed valuation of the property of Bergen county for the year 1906 was $60,-600,000, and that the $50,000 asked for by the county building committee and refused by the board of freeholders is for the purpose of paying preliminary expenses and acquiring land upon which to erect two separate buildings, one for a county court house and public offices and the other for a jail, and that the amount thus required is within the amount legally authorized by statute to be appropriated for that purpose.

In this case, in view of the agreement of counsel at the hearing that all the facts are before us that could be shown if there were an alternative writ issued in the first instance, and that, if the court thought a writ should go that a peremptory writ of *mandamus* should be issued, an order will be made that a peremptory writ of *mandamus* issue to the board of freeholders directing them to issue bonds pursuant to statute.