THE STATE OF NEW JERSEY v. CHARLES CONNORS.

Submitted March 18, 1915—Decided June 22, 1915.

1. Upon an indictment for burglary it was competent for the state to prove the *corpus delicti*, by showing that the defendant had been seen in the city on more than one occasion on the day of the crime, and that the finger prints found upon a column of the balcony of the house entered were similar to the finger prints of the defendant.

2. It was competent to show the finger prints upon the column by a photograph thereof, and to identify the finger prints of defendant made by experts after defendant's arrest.

3. It was not improper for the trial court to refer to the defendant's failure to be sworn as a witness to deny the incriminating fact that he was seen in the city upon the day of the crime; such proven fact being a necessary link in the state's chain of proof to make out a case to warrant a conviction upon the circumstantial testimony adduced.

---

On error to the Union Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the state. *Alfred A. Stein.*

For the defendant, *William Newcorn.*

The opinion of the court was delivered by

MINTURN, J. The defendant was indicted and tried for burglary in entering the home of Senator Ackerman, in Plainfield, on the evening of January 3d, 1914, and removing there-

from jewelry of the value of about $17,000. The only evidence of the crime obtainable by the state consisted in certain circumstantial facts. It was first attempted to be shown that the defendant was in Plainfield with two other men on the day of the crime. It was next shown that the burglar left certain traces of his fingers on the balcony post leading from the second story of the house where the articles of jewelry were kept, which finger prints correspond with finger impressions made by defendant at the request of an expert for the state, after the defendant had been extradited for the crime from Chicago. It was finally contended that with the charge of this crime staring him in the face, the defendant failed to take the witness-stand and acquit himself of any connection with it.

These facts made up the state's case and the case was sent to the jury without any substantive proof upon defendant's part.

We are asked to reverse the conviction of guilt upon many grounds, the most of which related to matters of procedure at the trial, and exceptions to the charge of the court. The two most serious questions in the case are those presenting the propriety of the admission of testimony concerning the finger prints and the reference by the court to the defendant's failure to testify. The admission of the photographs of the finger prints upon the column of the house was proper under the proof. 2 *Rice Ev.* 1163.

We think the objection to the finger-print testimony is practically and conclusively dealt with by the Court of Errors and Appeals in *State* v. *Cerciello,* 86 *N. J. L.* 309.

The same question was dealt with by the Court of Errors and Appeals in *State* v. *Miller,* 71 *N. J. L.* 528.

Of course, the circumstances in the different cases as they arise cannot be expected to be alike, but the principle of law once settled, as we conceive it to be by the decisions referred to, determines the legal propriety of admitting testimony of the same general character.

We think it was competent, therefore, to admit a *fac-simile* impression of the finger prints upon the post, for the purpose

of comparison with an actual impression of the defendant's finger prints taken for the purpose of comparison, as a means of eliciting a fact, viz., that the fingers in each instance were the same.

Whether or not they were the same presented a question of fact for the jury to determine, in view of all the circumstances and the light thrown upon them by experts in that art.

It was not for the court to determine as a matter of law that this testimony was useless and valueless in the examination of a legal inquiry which presented very little direct testimony upon the *corpus delicti.*

There was testimony in the case from which the jury might conclude that the defendant was in Plainfield with others on the day of the commission of the crime. The case thus presented was one of circumstantial evidence, but, standing upon those facts alone, there was sufficient proof, if the jury believed it. to warrant the conviction. This was accentuated by the defendant's failure to testify in his own behalf.

The trial court referring to that aspect of the case instructed the jury that the defendant's failure to testify in the face of the testimony adduced, by the state, tending to incriminate him, "may be taken into consideration by you along with the other testimony in the case in arriving at your verdict."

The court further instructed the jury that the defendant was not legally obliged to testify in behalf of himself. The defendant cites *Parker* v. *State,* 61 *N. J. L.* 308, and *State* v. *Wines,* 65 *Id.* 31, as authorities which uphold the failure of the defendant to take the stand in his own behalf as a right which cannot legally be the subject of comment or allusion by the trial court.

We think that whatever doubt existed as to the propriety of such a reference by the trial court, in a case dependent entirely upon the weight and value of circumstantial evidence, has been set at rest by the Court of Errors and Appeals in the case of *State* v. *Callahan,* 77 *N. J. L.* 685. In that case it was held, in an opinion by Mr. Justice Swayze, "that where the defendant fails to testify in his own behalf to deny inculpatory

facts which if false, he must know to be so, it is proper for the trial judge to call attention to his failure to so testify."

We think that statement of the law presents the situation in the case at bar. It was competent for defendant to deny his presence in Plainfield upon the day of the burglary, an incriminating factor of importance in the chain of evidence against him. His failure to do so left it open to the court under the Callahan case to refer to the fact as a proper subject for consideration by the jury in weighing the probabilities presented by the facts.

Our examination of the remaining exceptions presented by the record has convinced us that they are without merit.

The judgment of conviction will therefore be affirmed.