THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH LENNON, PLAINTIFF IN ERROR.

Argued March 20, 1930—Decided May 19, 1930.

For the plaintiff in error, *John W. McGeehan, Jr.*

For the defendant in error, *Simon L. Fisch* and *Joseph. L. Smith,* prosecutors of the pleas.

The opinion of the court was delivered by

BLACK, J.   The plaintiff in error, Joseph Lennon, with. two other defendants, were convicted of murder in the second degree for killing Edward Turella.   A writ of error was issued out of this court to review the legality of the conviction of the defendant, Joseph Lennon.   The plaintiff in error filed seven assignments of error and seven specifications of causes: for reversal covering the same points.

The first and second assignments of errors; errors by the trial court in refusing to grant a motion for the direction of a verdict of acquittal.

Third, fourth, fifth and sixth; errors in the charge of the trial court.

Seventh; the verdict was against the weight of the evidence, under *Pamph. L.* 1921, *p.* 951.

The fifth and sixth assignments of error are not argued. They are withdrawn in the brief of the plaintiff in error.

A short summary of the testimony sent up with the writ of error will make clear the assignments of error relied upon for a reversal, other than those relating to the charge of the trial court.

The theory of the state, as expressed in the brief, is the killing of Edward Turella grew out of an attempted perpetration of a robbery by the defendants; first, of a diamond pin worn by a companion of Turella's, and second, of $5,000 which the defendants thought was in the possession of Turella and his companion Carrione, who was also shot and killed on the same occasion.

Elsie Naugle, the first eye-witness, testifying on behalf of the state, testified as follows: Early in the morning of September 30th, 1926, she, accompanied by Edward Turella and Carrione, went to a saloon at 381 Washington street in an automobile. That while she was outside of the premises Turella and Carrione went inside, and during the few minutes she remained outside, another automobile drove up with five men in it, who parked their car behind that in which she was. She heard them speaking about dividing some money. Shortly thereafter the five men went into the premises while she was still outside. About twenty minutes later she, too, went in, being invited by Turella to come in and have a drink. No. 381 Washington street was a saloon with a large barroom in the front and a room in the rear, marked on the map *Exhibit S*-1, Room B. Room B was separated from the barroom by an old-fashioned swinging door. She, Miss Naugle, with Turella, went into Room B, where they were seated at a table with Carrione and a girl by the name of Mae Martin. In the same room, at a table next to theirs, were seated the defendants Nolan, Cane and Lennon. All three of them were identified by the witness. After a while, there was dancing to the music of a player piano, and the witness started to dance with Turella, while Mae Martin was dancing with the defendant Lennon. While Lennon was dancing with Mae Martin the witness saw Lennon reach over

and strike Carrione (who was still seated at the table) on the chin. Carrione, at the time, was wearing a diamond stick pin. At this instant, Turella ran over to help Carrione. Then John Blaszak, alias Scoop, one of Lennon's companions, started fist fighting with Turella, and then pulled out a gun and fired a shot at Turella's back. She heard a great many more shots fired after that, but she does not recall who the other persons were who fired them. During the early part of the fight, Cane, one of the other defendants, kept putting nickels in the player piano to continue its operation. Neither Turella nor Carrione had weapons and were fighting with their fists only. Scoop was also striking Turella over the head with the butt of his gun. During this confusion of general fighting the witness Naugle escaped and ran outside. While outside she saw the same five men, including the defendant, walk into their car and drive away. The witness then went in and found Turella lying in a pool of blood, and called an ambulance. Turella died in a few hours later.

The state produced five other witnesses, who testified along the same lines.

The defendant did not take the stand as a witness in his own behalf to deny any of the facts, which showed that he participated in the fight.

There is ample testimony showing, as the jury found, the guilt of the defendant. Manifestly, the trial court could not direct a verdict of acquittal under the testimony of the state's witnesses nor can this court reverse the judgment on the ground that the verdict is against the weight of the evidence, under such cases as *State* v. *Grace,* 98 *N. J. L.* 341; *State* v. *Morehous,* 97 *Id.* 285; *State* v. *Treficanto,* 106 *Id.* 344; *State* v. *Karpowitz,* 98 *Id.* 546.

We find no reversible error under the third assignment of error, under which the trial court told the jury, the defendants could be found guilty of murder in the second degree. *State* v. *Donato,* 106 *N. J. L.* 397. The criticism is largely verbal, based on the words used by the trial court in the charge, viz., "that these defendants or any of them or all of them killed Turella," &c., instead of saying, "any of

them" killed Turella, such person as did the killing or was present aiding and abetting in such killing, would be guilty.

The fourth specification of error attacks the following passage in the charge of the trial court, viz.: "The defendants make no effort to take the stand to testify, each for himself in his own behalf. In that connection, I want to say to you that if facts are testified to which concern the acts of the defendant, which he could by his oath deny, his failure to testify in his own behalf raises a strong presumption that he cannot truthfully deny them." It will be observed that the charge does no refer to guilt in general, but to certain specific acts of the defendant, such as a denial that the defendant was present at the fight or that he did not fire the fatal shot. This is in harmony with the cases in our courts, such as *State* v. *Kisik,* 99 *N. J. L.* 385; 388; *State* v. *Boccadoro,* 105 *Id.* 352; *Parker* v. *State,* 61 *Id.* 308. In the Parker case, it was said, his silence was capable of raising an inference of admission by acquiescence.

Finding no error in the record, the judgment of the Essex County Oyer and Terminer is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.