CONSTITUTION INDEMNITY COMPANY OF PHILADEL-PHIA, PLAINTIFF-RESPONDENT, v. GUST WICKBURG ET AL., INDIVIDUALLY AND AS PARTNERS TRADING AS GUST WICKBURG & SON, DEFENDANTS-APPEL-LANTS.

Submitted October 27, 1933—Decided February 2, 1934.

For the appellants, *David T. Wilentz.*

For the respondent, *John L. Ridley.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. The department of plant and structures of the city of New York contracted with the Charles Meads Company for the construction of the Fresh Kills bridge over Richmond creek.

Part of this work was sublet by the Meads company to one Otto Felton, Jr., trading as Coast Construction Company, and he, in turn, sublet a portion of the work under his contract to the defendants-appellants for $49,373. A bond was required of the appellants and upon application by them to the respondent it became surety thereon and the appellants executed to the respondent an indemnity agreement.

The Coast Construction Company claiming that appellants had defaulted in the work under their contract, took over the work, and the respondent company, as surety, paid $17,000 because thereof and was put to an expense of $400 for services of an engineer.

Action was brought by the respondent against the appellants under the aforesaid indemnity agreement to recover such damages or outlay and a trial of the issue resulted in a judgment of $17,400 and costs in favor of the respondent.

From such judgment the defendants below appeal and file nineteen grounds of appeal.

Such of these as are argued are urged under five points.

1. That the trial court erred in refusing to charge appellants' request as follows:

"The burden of the proof is on the plaintiff insurance company to show by a fair preponderance of the evidence, that Wickburg and Son had defaulted in their contract with the Coast Construction Company and if the plaintiff insurance company has not proven the default, then Wickburg and Son is not responsible for any sum paid out by the plaintiff insurance company by reason of any alleged default."

It appears that appellants insist that the error is that the trial court did not charge that the *burden* of establishing the default or breach was upon the plaintiff. It is true that the court in its instructions did not use the language "the burden of proof is upon the plaintiff, but we think that the following

excerpts from the charge could have conveyed to the jury no other thought, namely: "I am allowing you to consider under a fair preponderance of all the proof in the case, whether or not they did breach it, and whether they were able to carry on * * *" "if you find under a fair preponderance of all the proof in the case * * *."

If we are to understand that it is insisted that the burden was the plaintiff's to establish the breach by a fair preponderance of the proofs offered by it (which is not clear) our answer shall have to be that this is not so and that the instruction given, in that respect, was correct.

2. That there was error in refusing to nonsuit and direct a verdict in favor of appellants.

Both refused motions were based upon the ground that under the contract between the Coast Construction Company and appellants no default could be worked or declared except upon the approval of the architect and that such approval had not been shown.

But we think there was no error in the disposal of these motions, and we reach that conclusion for two reasons: (a) Because an examination of the contract in question will show that two distinct defaults appear to be contemplated; the one temporary in not providing a sufficiency of workmen and materials or to properly prosecute the work the contractor, upon notice with the approval of the architect, may supply such deficiency and the other, permanent, as where such "refusal, neglect or failure is sufficient ground for such action, the contractor shall also be at liberty to terminate the employment of the subcontractor for the said work and to enter upon the premises and take possession for the purpose of completing the work included under this contract * * *."

It was this latter thing that the Coast Construction Company undertook to, and did, do and it appears from the contract that there is no requirement of approval by the architect.

(b) The action was based upon the indemnity agreement before referred to, and that provided, *inter alia:*

"That a default within the meaning of this obligation shall be any failure upon the part of the undersigned to comply

with the directions of the engineer or architect in charge to perform the work at the time and in the manner specified in said contract, and in the event that the bond herein mentioned guarantees the payment of labor and materials in connection with the work, the failure of the undersigned to pay said bills when they become due and payable shall be default within the meaning hereof."

For some unexplained reason the bond was not introduced in evidence by either party and is therefore not before us nor was it before the trial court. Whether it contained in its covenant the item of payment for materials and labor just referred to we cannot know. The fact remains, however, that there is nothing in the case showing that it did not contain such a provision, which is not of importance, but the case having been tried upon the theory that it did, and much proof having been adduced that appellants were in default in both particulars, is of importance. The trial court instructed the jury that this would be a default within the meaning of the indemnity agreement. No exception to this instruction as a general proposition was entered. The exception lodged against this instruction, so far as pertinent, was: "There is no evidence in the case, nor anything in the contracts to the effect that Wickburg was to pay his men in cash." It was, therefore, a trial theory, unattacked except in the manner just indicated.

There was proof upon both of these propositions and therefore a nonsuit or direction in favor of appellants would have been erroneous.

It is further urged that there was error in refusing to charge the following request:

"In determining whether or not there was a default in the carrying out of the work according to the terms of the contract, it was necessary to obtain the approval of the architect as to such default. This architect is the man furnished by the department of plant and structures of New York."

In view of what we have already held upon this point we conclude that there was no error in refusing to so charge.

3. The trial court erroneously permitted the jury to find a

default by appellants if they were unable to pay their workmen in cash.

Under this point several matters of alleged error are urged. (a) That although the indemnity agreement provides that a failure to pay for labor and materials shall constitute a default still as the bond was not offered in evidence the presumption is that it did not so undertake and it was therefore error to permit an answer to a question to the witness, William Frazier: "Q. When did you get paid for the insurance?"

It was objected to as being a matter of indifference whether or not the premium was paid so long as appellants had a workmen's compensation insurance policy.

If there was error in the ruling we fail to see how the answer was harmful or prejudicial. In fact the witness had testified upon direct examination that such a policy had been in force from January 18th, 1930, to March 18th, 1930, when appellants had ordered that it be canceled. This was after the notice terminating their contract on March 7th, 1930. The answer to the question objected to was that the premium was paid March 10th, 1930.

(b) Because the trial court erroneously charged as follows: "Also counsel for the plaintiff has requested me to say to you that it is not necessary that plaintiff prove that the Coast Construction Company properly defaulted the Wickburgs since notice of default having been given, the demand made against the bonding company under its bond, it had the right under the indemnity agreement to settle that claim, provided it did so in good faith, and if it so paid in good faith, your verdict should be for the plaintiff. That has been submitted here in the form of a request for charge and I am inclined to qualify that statement made in behalf of the defendants to this extent, 'if there was no breach of the contract on the part of the Wickburgs, either, in their ability to pay their workmen in cash.' Now I do not agree with the attitude assumed by the defendants when they say that they did not breach the contract if their workmen were willing to work and wait for their pay. That is not my understanding of the requirements of the bond. What they could have done, if

the workmen assumed the attitude that they were willing to work without pay would have been to have had some sort of a payroll receipted, whereby the general contractor, subcontractor and bonding company might have evidence that the men were paid. I assume it makes no difference whether they were paid in cash if they signed the payroll from time to time, and, thereby put themselves in a position of not having any right to claim payment out of the general contract profits."

To this appellants excepted as follows:

"* * * in the respect that the learned court charged the jury that Wickburg had to pay his men in cash. There is no evidence in the case, nor anything in the contracts to the effect that Wickburg was to pay his men in cash. Secondly, the failure to pay in cash is not for the determination of the jury, if, in fact, the contract was performed by Wickburg."

The contention of the appellants appears to be that if their workmen were willing to continue to work and wait for their pay it was no concern of either the Coast Construction Company or the respondent and further that if this be not so the Coast Construction Company had ample protection under its contract with appellants to withhold the amount of such unpaid claims.

This, however, entirely overlooks and disregards the explicit terms of the indemnity agreement upon which the action was based.

(c) Error in permitting, over objection, answers to the following questions, to the witness William J. Sieling: "Q. I show you a bill of John Norsky, dated March. 8th to G. Wickburg and these other bills I will hand you and ask you if you know about those bills?" The objection to this was that the answer would be hearsay. It was not. Also to the same witness: "Q. I will also ask you if you paid these other bills of Charles F. McIntyre and this Weiglander bill?"

The objection was that the bill was immaterial as to when the work was performed. The objection was ineffective because most apparently such was not the purpose of the proof.

To the witness, Joseph Wataha: "Q. Who paid you for your work for the week ending February 7th, 1930?"

The objection was simply "I object to that" without assigning any ground or reason for the objection. It was, therefore, valueless. *Moran* v. *Green*, 21 *N. J. L.* 562; *Mooney* v. *Peck*, 49 *Id.* 232; *Willett* v. *Morse*, 71 *Id.* 104; *Semkin* v. *Hollander*, 82 *Id.* 485; *English* v. *Continental, &c.*, 98 *Id.* 438; *Gluck* v. *Castles Ice Cream Co.*, 104 *Id.* 397.

To the defendant, Arthur L. Wickburg: "*Q.* And ·I will ask you, if at any time between the date on this check 'and March 14th, 1930, you had funds sufficient in the bank to meet that check?"

Here, again, there was merely an objection without a statement of any reason or ground for it.

4. That the court erred in its interpretation of the contract respecting the performance of the work.

The contention of the appellants seems to be that as the contract provided for the completion of the work on July 1st, 1930, they might proceed and progress in any manner so long as there was completion on that date.

This is well shown by a colloquy between court and counsel for appellants: "I object to that. There is nothing in this contract which says that certain work must be done by a certain time. There is merely a flat time set by which all the work must be done." The court: "In other words, it is your idea that these people could wait until the 1st of July and then complete the work?" Counsel: "They could, yes." The court: "Well, I disagree with you."

Obviously this contention of counsel for appellants is unsound. Having in mind that the contract of appellants' was but a portion of the work under the contract of the Coast Construction Company, and that the latter's work was only a part of that of the entire contract held by the general contractor, Charles Meads Company, and that appellants were to be paid as and when the Coast Construction Company was paid by the general contractor it is but reasonable to say that the work of each must proceed so that of one shall not obstruct or interfere or impede that of the others.

So viewed the language of article 6 of appellants' contract is significant:

"The subcontractor shall complete the several portions and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to wit: The work shall be carried on with proper force and equipment that will meet the approval of the architect and accomplish completion within the specified time. The work shall commence three days after receipt of notice sent to the subcontractor by the contractor and shall be completed on or before July 1st, 1930."

5. Errors in rulings upon evidence.

(a) A question upon cross-examination of the witness, Fred G. Stickel, Jr.: "Q. But your explanation for that, for your not taking the equipment, is, as you said a while ago, that you had the right to keep the equipment under the agreement of indemnity, is that right?"

Although the objection to this question was sustained an answer was finally given.

(b) Question to William J. Sieling: "Q. Do you know the reason why Charles Meads Company received no money from the State of New Jersey to pay you so that you could pay Wickburg?"

The objection to this question was valueless because it stated no ground nor reason.

(c) Question to witness, William A. Stickel: "Q. Can you tell us how many piles were to be cut and piled, from the specifications?"

Here, again, the matter is not before us because there was merely an objection without stating ground or reason.

Finding no harmful or prejudicial error in any matter properly before us upon this appeal the judgment under review will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.   15.

*For reversal*—None.