THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MICHAEL O'CONNOR, PLAINTIFF IN ERROR.

Argued May 7, 1946—Decided September 27, 1946.

Before CASE, CHIEF JUSTICE, and Justice HEHER.

For the plaintiff in error, *Albert J. Shea.*

For the state, *Walter D. Van Riper,* Attorney-General and Acting Prosecutor of the Pleas of the County of Hudson, *Raymond J. Cuddy* and *William P. Gannon,* Deputy Attorneys-General.

The opinion of the court was delivered by

HEHER, J.  Plaintiff in error sued out a writ of error to review a judgment of conviction upon an indictment charging

that on September 21st, 1945, he "did carry" a loaded revolver "concealed on and about his clothes and person * * *, without having first obtained the requisite permit to carry the same," in contravention of *R. S.* 2:176–41. This indictment and another alleging that plaintiff in error also, on the prior August 31st, while armed with a revolver, perpetrated a robbery upon one John Daddetta were tried together, by consent.

The points raised and argued are (1) that the trial judge erred in his refusal to direct a verdict of not guilty at the close of the state's case; and (2) that the verdict of guilty was against the weight of the evidence.

The motion to direct a verdict of acquittal was addressed to the discretion of the court, and the action thereon is not reviewable on error. *State* v. *Jaggers,* 71 *N. J. L.* 281; *State* v. *Metzger,* 82 *Id.* 749; *State* v. *Cohen,* 97 *Id.* 5; *State* v. *Pius,* 118 *Id.* 212. Such action is reviewable, however, where the entire record of the proceedings had upon the trial has been returned by the plaintiff in error with the writ of error and the bill of exceptions, under *R. S.* 2:195–16, and the ruling has been specified as a cause for reversal in accordance with *R. S.* 2:195–18. Here, the entire record of the proceedings upon the trial, certified by the trial judge, was returned with the writ of error, but there was no specification of causes for reversal. The ruling thus complained of was made the subject of an assignment of error merely, and it is therefore not reviewable under *section* 2:195–16, *supra. State* v. *Lyons,* 70 *N. J. L.* 635; *State* v. *Miller,* 71 *Id.* 527; *State* v. *Kind,* 80 *Id.* 176; *State* v. *Merkle,* 83 *Id.* 677; *State* v. *Ramage,* 91 *Id.* 435. With the exception presently to be mentioned, the plaintiff in error is confined to the errors assigned upon the bill of exceptions.

The point that the verdict was contrary to the weight of the evidence has been raised by an assignment of error; and, by force of *R. S.* 2:195–19, the plaintiff in error in a criminal case may "assign as error that the verdict was against the weight of the evidence, whether or not any exception has been taken or motion to acquit has been made," where the entire record of the trial proceedings has been returned with the bill

of exceptions, and in such event the appellate court is enjoined to award a new trial "if it shall appear from a consideration of the entire evidence that the verdict was against the weight of the evidence * * *."

To warrant a conviction in a criminal case the jurors must be satisfied of the accused's guilt beyond a reasonable doubt; but the inquiry by the reviewing tribunal under *section 2:195–19, supra,* is whether, upon a comparison and consideration of all the evidence, it clearly appears that the verdict is the product of mistake, passion, prejudice or partiality. It is not necessary that the minds of the reviewing judges also be satisfied of guilt beyond a reasonable doubt. *State* v. *Hauptman,* 115 *N. J. L.* 412, 443; *State* v. *Karpowitz,* 98 *Id.* 546; *State* v. *Woodworth,* 121 *Id.* 78.

We find that the verdict is grounded in circumstances reasonably and naturally tending to establish the accused's guilt of the crime charged; and thus the conclusion of the jury is not assailable as contrary to the weight of the evidence.

The accused was taken into custody by a lieutenant of the Hoboken police department on a street in Hoboken near a steamship pier, under a warrant issued upon a complaint charging that he had robbed Daddetta at the point of a revolver. Holding him by the arm, the arresting officer directed the accused to enter a police radio car standing nearby, occupied by two local police officers, one the operator of the vehicle. The accused entered the car by the left rear doorway and seated himself on the left side, behind the operator. The lieutenant ordered him to "move over," and stepped into the vehicle to take the seat he had vacated, and then he found a blue polka dot handkerchief on the seat, and a loaded revolver underneath it. He testified that he asked the accused, "What's this?" and the reply was "I don't know." The latter denied there was such an inquiry, and also that mention was made of the discovery of the handkerchief and the weapon, and that he had seen either in the patrol car. The lieutenant's testimony in this regard was corroborated by his fellow officers. The accused was attired in dungarees and a flannel shirt, without coat; and, as he entered the car, the lieutenant observed a handkerchief of that description protruding from

the left back pocket of his overalls. There was no handkerchief on the accused's person when he was searched at police headquarters, shortly after his arrest. He admitted ownership of like handkerchiefs, but he would not say that the one found on the car seat was his. He was not searched until he arrived at police headquarters, after the revolver was found. This was the testimony of the three police officers who participated in the arrest. And the accused, himself, admitted there was no search of his pockets at the scene of his arrest; he said the arresting officer "gave me a brush-off and put me in." He denied both ownership and possession of the revolver.

Concededly, neither the weapon nor the handkerchief was on the car seat when the accused entered the vehicle; and it was fairly open to the jury to find that the weapon was later placed there, not by one of the police officers, but by the accused, himself, in an effort to remove the evidence of its concealment on his person, and thus to escape the consequences of his crime, not only the particular offense, but perhaps the charge of robbery, as well. This also disposes of the intimation that the whole was a fabrication, and that the gun was not in the patrol car at all.

A finding of guilt in a criminal case may rest upon indirect or circumstantial evidence if it be in quality sufficient to generate in the jurors' minds a belief and conviction of guilt beyond a reasonable doubt. Such is ofttimes more certain, satisfying and persuasive than direct evidence, where credit and accuracy of observation, knowledge and recollection may be questions giving rise to substantial doubts; the circumstances may be established by evidence that is irrefragable, and they may be of such force as to lead, in the exercise of reason informed by certain experience, to the exclusion, to a moral certainty beyond a reasonable doubt, of every reasonable hypothesis but that of guilt, and thus to a moral conviction of guilt beyond a reasonable doubt. The probative worth of circumstantial evidence is determined by the rules of ordinary reasoning, such as govern mankind in the ordinary affairs of life. The only qualification in criminal cases is that guilt must be established beyond a reasonable doubt. Here, the accused's credibility was seriously shaken. He had twice been

convicted of robbery, once by the use of a gun, and also of attempted robbery, breaking and entering and larceny, and breaking prison. And the jury had the distinct advantage of personal observation of all the witnesses and their demeanor on the witness stand. There is nothing to suggest that it misconceived the standard fixed by the law for the assessment of the proofs, or that it allowed improper considerations to control its judgment.

Judgment affirmed.