THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
HERMAN FRIEDMAN, PLAINTIFF IN ERROR.

Submitted October 1, 1946—Decided April 18, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and
COLIE.

For the plaintiff in error, *Kessler & Kessler* (*Samuel I. Kessler* and *William L. Vieser,* of counsel).

For the state, *Duane E. Minard, Jr.,* Prosecutor of the Pleas, and *C. William Caruso,* Assistant Prosecutor of the Pleas.

The opinion of the court was delivered by

HEHER, J. Plaintiff in error was convicted upon an indictment charging the breaking and entering, by night and by day, of the dwelling house of one Boorse, in the Town of Upper Montclair, with intent to steal, &c., and the larceny and receiving of goods and chattels of the householder.

Pursuant to *R. S.* 2:195–16, the entire record of the trial proceedings has been returned with the writ of error and the bill of exceptions.

The accused did not offer himself as a witness; and error is assigned upon the charge of the court in that regard. The instruction follows:

"The defendant chose not to take the witness stand. A defendant in a criminal proceeding may testify in his own behalf if he so desires, though he cannot be compelled to be a witness against himself, but when the accused is upon trial and the evidence tends to establish facts, which, if true, would be conclusive of his guilt of the charge against him and he can disprove them by his own oath as a witness if the facts be not true, then his silence would justify a strong inference that he could not deny the charge."

This was an application of the doctrine first enunciated in the case of *Parker* v. *State*, 61 *N. J. L.* 308; *affirmed*, 62 *Id.* 801. There, this specific adverse inference was declared to be "natural and irresistible;" the accused's failure to take the witness stand in such circumstances was deemed a "plain and forcible * * * indication of guilt" which the law did not oblige the judge to ignore in his instructions to the jury. The principle still pervades our jurisprudence, but the formula of its expression has been modified. Our court of last resort considers it more accurate to say that "if facts are testified to which concern the acts of the defendant which he could by his oath deny, his failure to testify in his own behalf raises a strong presumption that he cannot truthfully deny them." *State* v. *Kisik*, 99 *Id.* 385; *State* v. *Boccadoro*, 105 *Id.* 352. But it is said that the rule obtains only where the evidence against the accused is direct, as distinguished from circumstantial, and "there are direct accusations against the accused which if true would be conclusive of his guilt, and which he could by his own oath truthfully deny," and such is not the case here.

There are cases which seemingly distinguish, as respects the pertinency of this doctrine, between "direct evidence of guilty acts" which the accused had it in his power to deny

by his oath, if untrue, and evidence against him that was "only circumstantial, and therefore only raised inferences as to his acts." *E. g., State* v. *Twining,* 73 *N. J. L.* 683, 691. Yet in the later case of *State* v. *Callahan,* 77 *Id.* 685, the Court of Errors and Appeals sustained a like instruction on the trial of an indictment for keeping a disorderly house, where there was evidence of direct acts from which the jury could properly infer immoral practices, and the accused's knowledge of such practices was provable only by circumstances. Mr. Justice Swayze said that the judge is justified "in commenting upon the failure of the defendant to deny any inculpatory facts which may be within his knowledge," and that the failure of the accused in that case to "deny knowledge" warranted the comment made by the judge in his charge. See, also, *State* v. *Wines,* 65 *Id.* 31; *State* v. *Connors,* 87 *Id.* 419. There is a difference in this regard between specific facts in proof within the accused's knowledge, from which guilt may be deduced, and circumstances admitting only of a general denial. *State* v. *Lennon,* 107 *Id.* 94; *State* v. *Howard,* 83 *Id.* 636. And, as pointed out in the Callahan case, *supra,* the force and effect of the accused's failure to deny circumstances which tend to prove guilt by inference only is of necessity much less than the effect of his failure to deny direct testimony of a guilty act by him; but that bears upon the character of the judge's comment rather than upon the right to comment. In fine, where there is evidence of inculpative circumstances reasonably tending to sustain an inference of guilt of the crime charged, and their truth or falsity is within the specific knowledge of the accused, his failure to go upon the witness stand to deny their truth is, itself, a fact for the consideration of the jury, with all the facts and circumstances. It enters into the evaluation of the proofs as a whole. In *Bartlett* v. *Lewis,* 12 *C. B.* (*N. S.*) 249, 263, Alderson, B., said: "It seems to me that a party not denying a fact which it is in his power to deny gives color to the other evidence against him."

What was done here was but the exercise of the judge's power under the common law to comment generally on the

evidence. At common law, the accused was not a competent witness in his own behalf; and the qualifying legislation in this state does not forbid an unfavorable inference from the failure of the accused to avail himself of the privilege thus accorded him. Such an implication does not constitute a violation of his common-law exemption from compulsory self-crimination. True, the presumption of innocence continues until the jury resolves the issue of guilt or innocence; but the drawing of a prejudicial inference from a claim of the privilege of silence in such circumstances is neither a reversal of that presumption nor an invasion of the accused's immunity from testimonial compulsion. *Vide State* v. *Sgro,* 108 *N. J. L.* 528; *State* v. *Kisik, supra.* That would be an extension of the common-law privilege. The voluntary choice of silence is a fact to be considered with all the circumstances. The denial of protection from the adverse inference is not inconsistent with the claimed immunity; *e contra,* experience teaches that it serves essential justice.

It remains to consider whether the challenged instruction was applicable to the facts and circumtsances of the case. We think it was.

On June 26th, 1945, there was a forced entry of the Boorse dwelling house at 132 Summit Avenue, Upper Montclair, between 9:45 A. M. and 5:30 P. M., while the occupants were away, and goods therein were stolen. The entry was effected through a rear basement window leading into the laundry. Shortly after the event, a slip of paper bearing the typed name and street address of one Nathan Frischer, of Newark, was found among "leaves and brush" scattered by the intruder over the window sill and the laundry tubs and floor beneath while making his way into the house. This was the clue which led to the arrest of the accused. In a statement to the police authorities, which was introduced in evidence and stood uncontradicted, he said that his mother dealt in "second hand furniture, fixtures, stoves, radios, &c.," at a place in Newark, and he was the manager of the business; that on the evening of the day prior to the forced entry of the Boorse home, his father turned over to him the slip containing Frischer's name and address (which Frischer had clipped from the wrapper

of a foreign language newspaper mailed to him and had used as a "calling card," as was his wont), with instructions to go to the Frischer home and examine a stove which Frischer desired to sell; that on the morning of the following day, June ·26th, he journeyed in a station wagon to the home of one Levenson at 136 Summit Avenue, Upper Montclair, the second door from the Boorse dwelling, carted away certain equipment, and returned with a helper and truck in the afternoon and dismantled and removed a pool table, all pursuant to an agreement of sale. Evidence was adduced from members of the ·Levenson family that during the afternoon visit, while the helper was at work dismantling the pool table, the accused left the basement and remained away for a period of "approximately twenty minutes." Frischer identified his "calling card," so-called, found on the Boorse premises, as the one left by him at the accused's place of employment on the prior day. And, in his statement· to the police, the accused said that on the evening of June 25th, after his father had given him the paper slip, he went to Frischer's home but found he was not there. The statement also reveals that he identified the paper slip as the one given to him by his father, and that he said he thought he had "put it on the desk at the store," but was "not sure what" he "did with it."

Thus, it is a reasonable and natural inference, barring an explanation *contra,* that the·paper slip in question came upon the Boorse premises by reason of the accused's presence there on the day of the forced entry; and it was therefore proper for the judge to comment as he did upon the failure of the accused to take the witness stand and deny his presence there and the charge of unlawful entry fairly inferable from such presence. It was a relevant circumstance that he did not seek to repel the hostile implication by his oath. This is likewise true of his failure to account for his absence from the Levenson house during the removal operation. It is a corollary of the foregoing that it was also proper for the Prosecutor of the Pleas to comment upon the accused's failure to deny the charge under oath.

And, by the same reasoning, the verdict is not assailable as against the greater weight of the evidence.

It was for the jury to determine whether the evidence demonstrated guilt beyond a reasonable doubt; and a verdict is not to be set aside on error as against the weight of the evidence under *R. S.* 2:195–19, unless it clearly appears that it was the product of mistake, passion, prejudice, or partiality. *State* v. *Woodworth,* 121 *N. J. L.* 78. Such is not the case here.

Judgment affirmed.