THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ROY ALLEN CORBY, DEFENDANT-APPELLANT.

Argued September 9, 1958—Decided October 20, 1958.

*Mr. Sol Schulman,* Assistant Prosecutor, argued the cause for respondent (*Mr. Lawrence A. Whipple,* Hudson County Prosecutor; *Mr. Frank J. V. Gimino,* on the brief).

*Mr. Jack B. Kirsten* argued the cause for appellant (*Mr. Joseph M. Schoenberg,* attorney).

The opinion of the court was delivered by

FRANCIS, J.  Defendant was convicted of armed robbery in the County Court.  Upon affirmance of the conviction in the Appellate Division (47 *N. J. Super.* 493), we granted certification.

Only one reason for reversal is now urged, namely, that the trial court erred in charging the jury with respect to the defendant's failure to testify in his own behalf, as follows:

"Now, this defendant did not take the stand in his own defense. When the State's case rested, the defense rested. The defendant had a perfect right under the constitutional law of our state to testify in his defense, but he chose not to do so. And there is a principle of law that is applicable to a situation of that kind which I will read to you. It is as follows:
'When facts concerning the acts of the accused are testified to, which prove or tend to prove his guilt, and he, by his oath can deny them, his failure to testify *raises a strong presumption* that he cannot truthfully deny those facts.'" (Emphasis added)

It must be noted at the outset that no objection was interposed to this instruction at the trial. Consequently no basis for appellate review exists unless the challenged language qualifies as plain error, *R. R.* 1:5–1(*a*), which is legal impropriety affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result. *State v. Haines,* 18 *N. J.* 550, 565 (1955); *State v. Picciotti,* 12 *N. J.* 205, 211 (1953).

Examination of the record reveals that ample evidence was adduced by the State to implicate Corby in the robbery and to justify his conviction. No present suggestion is made that the verdict of guilt is contrary to the weight of the evidence. It was raised in the Appellate Division and disposed of adversely. Abandonment of the ground in this court obviously represents recognition of the reality of the situation. Moreover, trial counsel heard the full text of the charge which by specific discussion of the implicatory facts and by fair comment as to the limitations upon their probative force apparently satisfied him that the jury would not be unduly influenced by the reference to the defendant's failure to take the witness stand. The withholding of objection or request for further explanation or qualification adequately points to that conclusion. And so, without detailing

the factual sum of the proofs, it is sufficient to say that we find no such manifest injustice as would warrant a declaration that the criticized charge constitutes plain error. *Cf. State v. O'Leary*, 25 *N. J.* 104 (1957).

However, since the question engendered by the trial court's charge is before us, it seems worthwhile to reappraise the principle of law applicable to the failure of a defendant in a criminal action to testify in his own behalf. In substance, the jury here was told that the failure "raises a strong presumption that he cannot truthfully deny" the inculpatory facts testified to against him. A fresh consideration of that rule may be posited on an acceptance of the premise that in the past our appellate courts, in speaking of "presumption" in this context, understood and intended it to signify "inference" and so used the words interchangeably. Then the endeavor would be to seek a mode of expression which will fit more compatibly for purposes of jury comprehension within the framework of fundamental principles controlling the trial of criminal causes. Establishment of an overall harmonious pattern of instructions, capable of easy explanation to, and understanding by, a jury of laymen, is a goal of the first order in the pursuit of justice through the mechanism of the modern trial.

There is no doubt that support can be found in the cases tracing back to *Parker v. State*, 61 *N. J. L.* 308 (*Sup. Ct.* 1898), affirmed 62 *N. J. L.* 801 (*E. & A.* 1899), for the form of charge given by the trial court. Almost the precise wordage was sanctioned in *State v. O'Leary, supra,* 25 *N. J.* at *page* 110, although questioned in the concurring opinion of the Chief Justice at *page* 116; in *State v. Wise,* 19 *N. J.* 59, 100 (1955), and in *State v. Rogers,* 19 *N. J.* 218, 236 (1955). In what is generally regarded as the source case, *Parker v. State, supra,* the Supreme Court spoke of the absence of the defendant from the witness stand in these terms:

"But when the accused is upon trial, and the evidence tends to establish facts which, if true, would be *conclusive of his guilt* of the charge against him, and he can disprove them by his own oath

as a witness if the facts be not true, then his silence would justify a strong inference that he could not deny the charges." (Emphasis added)

That language might well be understood to make the emergence of the inference dependent upon the existence of facts which, if undenied, were conclusive of guilt. But that observation aside, it is important to note that the word "inference," and not "presumption," was used, and that the phrase respecting the existence and character of the inference, *i. e.,* "would justify," was permissive and not mandatory. That is, the jury would be justified in drawing the inference in the course of their deliberation on the totality of the proofs as to guilt or innocence—not that the law imposed the inference upon them as one which they were duty bound to accept and apply.

In the ensuing years, variant declarations of the rule found their way into the reports. Sometimes they were harsher, sometimes more moderate, depending in some measure and in some instances apparently upon whether the inculpatory proof was direct or circumstantial. According to former Chief Justice Case's analysis of the cases "[o]ur appellate courts have not always been entirely clear in their expressions on the subject." *State v. Anderson,* 137 *N. J. L.* 6, 7 (*Sup. Ct.* 1948). It was said that "because a man does not go upon the stand, you are not necessarily justified in drawing an inference of guilt. But you have a right to consider the fact that he does not go upon the stand where a direct accusation is made against him" (*State v. Twining,* 73 *N. J. L.* 3, 12 (*Sup. Ct.* 1905), affirmed 73 *N. J. L.* 683 (*E. & A.* 1906), affirmed *Twining v. State of New Jersey,* 211 *U. S.* 78, 29 *S. Ct.* 14, 53 *L. Ed.* 97 (1908); "[t]he force and effect of the failure of the defendant to deny circumstances which tend to prove guilt only by inference is necessarily much less than the effect of his failure to deny direct testimony of a guilty act" (*State v. Callahan,* 77 *N. J. L.* 685, 686 (*E. & A.* 1909)); "but, when it comes to his own confession of guilt produced here in open court, the fact that he has seen fit not to deny it in any way is

a matter that you have a right to consider. Further than that, I will make no charge to you, but leave it to your own good judgment as to whether or not you will draw any inference from that fact" (*State v. Banusik*, 84 *N. J. L.* 640, 648 (*E. & A.* 1906)); the failure to become a witness in the face of testimony tending to incriminate "may be taken into consideration by you along with the other testimony in the case in arriving at your verdict" (*State v. Connors*, 87 *N. J. L.* 419, 421 (*Sup. Ct.* 1915)); "you have the right to draw inferences against him" (*State v. Schilling*, 95 *N. J. L.* 145, 154 (*E. & A.* 1920)); "may be considered by the jury as an inference against him" (*State v. Rubenstein*, 5 *N. J. Misc.* 387 (*Sup. Ct.* 1927)).

In *State v. Kisik*, 99 *N. J. L.* 385, 388 (*E. & A.* 1924), for the first time the principle was stated to be that the defendant's failure to testify in denial of implicatory facts concerning his acts *"raises* a strong presumption that he cannot truthfully deny them." A reading of Chancellor Walker's opinion shows that his statement was predicated upon *Parker v. State, supra*, that in the discussion of the problem he used the words "would justify" appearing therein, that he explained the reversal of the conviction in *State v. Wines*, 65 *N. J. L.* 31 (*Sup. Ct.* 1900), as having been caused by an instruction that the omission to testify *"created* a natural and irresistible inference against him," that in referring to "presumption" rather than "inference," as in *Parker*, he was giving the terms the same connotation and that he did not intend, by introducing the word "raises" into the rule, to transmute its character from that of a permissive implement in the hands of the jury to a mandate established by the law which the jury was bound to accept and apply. But the argument that the effect of the injection of "raises," irrespective of the intent with which it was inserted, is to set up a legal mandate and thus circumscribe the deliberations of the jury as well as the force of the presumption of innocence, is difficult to cry down.

Once in the reports, the words "raises," "raised" and "presumption" were repeated. See *State v. Boccadoro*, 105

*N. J. L.* 352, 357 (*E. & A.* 1929); *State v. Lennon,* 107
*N. J. L.* 94, 97 (*E. & A.* 1930); *State v. Sgro,* 108 *N. J. L.*
528, 532 (*E. & A.* 1932); *State v. Lutz,* 135 *N. J. L.* 603,
607 (*Sup. Ct.* 1947); *State v. Friedman,* 136 *N. J. L.* 527,
531 (*E. & A.* 1948); *State v. Wise, supra; State v. Rogers,
supra; State v. O'Leary, supra.* However, in no case have
we found a discussion or treatment of the contention that
the legal and probative force of "presumption" and "infer-
ence" is different or that such words as "raises" or "creates"
proclaim a mandatory and not a permissive doctrine. But
certain conclusions of a positive character are inescapable
from the many opinions. Perhaps the most important of
these has already been adverted to, namely, that a presump-
tion and a permissive inference were treated as being of the
same significance and evidentiary force. Note: *State v.
Rogers, supra,* 19 *N. J.* at *page* 236; *State v. Costa,* 11 *N. J.*
239, 256 (1953); *State v. Christy,* 26 *N. J. Super.* 459, 465
(*App. Div.* 1953); *State v. Marinella,* 24 *N. J. Super.* 49, 53
(*App. Div.* 1952), certification denied 11 *N. J.* 612 (1953);
*State v. Edelman,* 19 *N. J. Super.* 350, 355 (*App. Div.*
1952); *State v. Friedman,* 135 *N. J. L.* 414, 416, 417 (*Sup.
Ct.* 1947), reversed on other grounds, 136 *N. J. L.* 527
(*E. & A.* 1948). Secondly, it is plain that there was no
intention to vitiate or neutralize the presumption of innocence.
The import is not that the failure to testify creates an in-
ference or presumption of guilt of the offense charged but
rather that an unfavorable inference may be drawn by the
jury with relation to the incriminatory facts and that such
inference, if drawn, is to be considered with all the other
facts and circumstances bearing on the ultimate issue of the
defendant's guilt or innocence. In other words, the mean-
ing is that the jury may infer that the defendant's court-
room silence is an indication of the truth of those facts and
that among the inferences which may reasonably be drawn
therefrom, those unfavorable to the defendant are more
probable. *State v. Costa, supra,* 11 *N. J.* at *page* 256; *State
v. Friedman, supra,* 136 *N. J. L.* at *page* 531, and at *page*
416 of 135 *N. J. L.; State v. Kisik, supra,* 99 *N. J. L.* at

*page* 388; *State v. Marinella, supra,* 24 *N. J. Super.* at *page* 53; *State v. Edelman, supra,* 19 *N. J. Super.* at *page* 355; *State v. Anderson, supra,* 137 *N. J. L.* at *page* 8; *People v. Adamson,* 27 *Cal. 2d* 478, 165 *P. 2d* 3 (*Sup. Ct.* 1946), affirmed *Adamson v. People of State of California,* 332 *U. S.* 46, 67 *S. Ct.* 1672, 91 *L. Ed.* 1903 (1947), rehearing denied 332 *U. S.* 784, 68 *S. Ct.* 27, 92 *L. Ed.* 367 (1947).

■■■ Only in a small minority of states may comment be made by the trial court on a defendant's abstention from denying inculpatory facts tending to establish his guilt. *Wharton's Criminal Evidence* (*12th ed.* 1955), § 147; 8 *Wigmore, Evidence* (*3d ed.* 1940), § 2272. New Jersey is one of them and we are satisfied that the rule accords with common sense and justice. A defendant cannot be compelled to testify, but the privilege of doing so was created for the benefit and protection of the innocent. If he remains silent when he should speak, he does so by choice and that choice should reasonably be subject to comment; his failure is logically relevant as to his guilt or innocence. *Adamson v. People of State of California, supra,* concurring opinion of Justice Frankfurter at 332 *U. S.* 61, 67 *S. Ct.* 1679, 91 *L. Ed.* 1912. In administering the rule permitting comment, we have an obligation to see that it is done in a fashion which will avoid confusion, actual or possible misunderstanding by juries and possibly undue prejudice to the accused. Thus we are brought to the questions for consideration in this case. In the quest for ultimate justice in trials where the defendant fails to testify and comment thereon is justified by the trial court, can and should the expression of the principle involved be stated more clearly in relation to its exact nature and so as to be plainly consistent and compatible with other basic principles of the criminal law to be covered by the charge? And can it be made such a part of an integrated charge that possible misunderstanding on the part of a jury of laymen will be eliminated?

Instances of the interchangeable use of "presumption" and "inference" have been fairly common. But the more modern writing has invariably been in the direction of recognizing

a substantial difference between them. *George Foltis, Inc. v. City of New York*, 287 *N. Y.* 108, 38 *N. E.* 2d 455, 153 *A. L. R.* 1122 (*Ct. App.* 1941); 9 *Wigmore, supra*, § 2491. A presumption is an assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or set of facts. An inference is a deduction which may or may not be made from certain proven facts. The term "presumption" connotes that a force is accorded by law to a given evidential fact whereby the duty of producing further testimony is affected. An inference, however persuasive, does not affect the duty of producing testimony. A presumption is compulsory and *prima facie* establishes the fact to be true; it remains compulsory if it is not disproved. A presumption cannot be disregarded by the jury while an inference may or may not be, depending on the deductions made by the jury from all of the evidence. A presumption has a technical force or weight attached to it and the jury, in the absence of proof overcoming it, must find in accordance with it. An inference carries no such force as a matter of law. The jury is at liberty to find the ultimate fact one way or the other as they may be convinced by the testimony. In the one case, the law draws a conclusion from the evidence; in the other, the jury may draw the conclusion, depending upon how they view the impact of the proof. In short, a presumption is a mandatory deduction, born as a matter of law, while an inference is a permissive deduction which the reason of the jury may or may not reach without express direction of law. *Gaudreau v. Eclipse Pioneer Division of Bendix Air Corp.*, 137 *N. J. L.* 666, 669 (*E. & A.* 1948); *Ocean County National Bank v. Stillwell*, 123 *N. J. Eq.* 337, 342, 343 (*E. & A.* 1938); *Bower v. Bower*, 78 *N. J. L.* 387 (*E. & A.* 1909); *Barfield v. United States*, 229 *F.* 2d 936 (5 *Cir.* 1956); *United States v. Sherman*, 171 *F.* 2d 619 (2 *Cir.* 1948), *certiorari* denied *Grimaldi v. United States*, 337 *U. S.* 931, 69 *S. Ct.* 1484, 93 *L. Ed.* 1738 (1949); *Erie R. Co. v. Murphy*, 9 *F.* 2d 525 (2 *Cir.* 1925); *Starkweather v. Conner*, 44 *Ariz.* 369, 38 *P.* 2d 311 (*Sup. Ct.* 1934);

*Frye v. St. Joseph Ry., Light, Heat & Power Co.*, 231 *Mo. App.* 407, 99 *S. W. 2d* 540 (*Ct. App.* 1936); *Application of Kline,* 71 *Nev.* 124, 282 *P. 2d* 367 (*Sup. Ct.* 1955); *Cogdell v. Wilmington & W. R. Co.*, 132 *N. C.* 852, 44 *S. E.* 618 (*Sup. Ct.* 1903); *Cave v. McLean,* 66 *Ohio App.* 196, 32 *N. E. 2d* 581 (*Ct. App.* 1939); *Cross v. Passumpsic Fiber Leather Co.,* 90 *Vt.* 397, 98 *A.* 1010 (*Sup. Ct.* 1916); 31 *C. J. S. Evidence* § 115; *Underhill's Criminal Evidence* (*5th ed.* 1956) § 40; and note *Rule* 13, *Report of the Supreme Court Committee on the Revision of the Law of Evidence* (1955); *Rule* 13, *Report of the Commission to Study the Improvement of the Law of Evidence* (1956).

The distinction recognized by the authorities as to the character and effect of a presumption as distinguished from those of an inference lends added weight to the suggestion that the language of the statement to the jury should be revised. Failure to testify has been said to *raise* a strong presumption that an accused could not deny the inculpatory facts proved against him. In ordinary circumstances, it may well be argued that the deliberative function of the jury is improperly circumscribed thereby, first, by being told that the presumption springs into existence as a matter of law from the defendant's silence and, second, because of the legal consequences of the presumption that those facts could not be denied.

Where it is necessary to do so, judges and lawyers can appreciate a dynamic difference between a presumption and an inference and the legal sequelae of each. So we of the legal profession may accept the notion that the trial court intended to use presumption in the sense of inference, and that such was the intention of the reported cases. But what about a jury in the ordinary case? They are charged first that an accused is *presumed* to be innocent, and the State has the burden of overcoming that *presumption* by proof showing guilt beyond a reasonable doubt. Then when they are instructed later in the charge that his failure to testify raises a *strong presumption* that he could not deny the incriminatory facts, is it likely that they would be confused?

They are naturally concerned with the scope and nature
of the consideration to be given to the lack of explanation
or denial, and yet they cannot be expected to realize that the
same word carried different connotations.

As Judge Hand said in *United States v. Sherman, supra,*
171 *F. 2d* at *page* 624 (a receiving stolen goods case):

"In discussions among lawyers and judges of the difference between
a permissible inference and a presumption, the terminology may be
unimportant. But the jury may be misled by the word 'presumption';
and here it may have interpreted that word as far stronger than
a permissible inference."

*Cf. State v. D'Amato,* 26 *N. J. Super.* 185 (*App. Div.* 1953);
*Hickory v. United States,* 160 *U. S.* 408, 16 *S. Ct.* 327,
40 *L. Ed.* 474, 479 (1896); *Territory v. Lucero,* 16 *N. M.*
652, 120 *P.* 304, 39 *L. R. A., N. S.,* 58 (*Sup. Ct.* 1911);
*State v. Godlasky,* 47 *S. D.* 36, 195 *N. W.* 832 (*Sup. Ct.*
1923); *Camper v. State,* 187 *Tenn.* 511, 216 *S. W. 2d* 18
(*Sup. Ct.* 1948); *Jenkins v. Commonwealth,* 132 *Va.* 692,
111 *S. E.* 101, 25 *A. L. R.* 882 (*Sup. Ct.* 1922). And as
the Supreme Court of Minnesota declared in *State v. Kelly,*
218 *Minn.* 247, 15 *N. W. 2d* 554, 561, 162 *A. L. R.* 477
(1944):

"It has well been stated that 'presumptions of law—at the best,
uncertain instruments in the investigation and discovery of truth—
are especially dangerous, in the administration of criminal justice,
when used to control or impair the natural fundamental presumption
of innocence; their effect being to give to evidence a technical
probative force beyond that which it would naturally and ordinarily
possess in producing conviction in the minds of the jury.'"

It does not seem unreasonable, therefore, to argue that a jury
might believe that the "strong" presumption of the truth
of the incriminatory facts emasculated the presumption of
innocence. Whatever may be our individual views on the
point, it seems fair and just to conclude that an effort to
eliminate such probable or possible confusion or prejudice
in the trial of criminal actions is a desirable endeavor.

The presumption of innocence is one of the beacon lights
of the criminal law and one of the strongest known to it.

It is founded on first principles of justice and is a substantial right accruing to the benefit of the accused upon every material fact necessary to constitute guilt. *Wharton, supra,* § 93. It attends the accused throughout the trial, and in the various mental conditions, ranging from that in which the jurors think him innocent, to that in which they are convinced beyond a reasonable doubt of his guilt, the presumption entitles him to the benefit of their uncertainty. *State v. Raymond,* 53 *N. J. L.* 260 (*Sup. Ct.* 1891). It survives all intermediate inferences and presumptions and represents the ultimate safeguard against unjust conviction. So in considering the force of presumptions, we must have in mind not only the guarantees of due process and trial by jury and the protection against being compelled to testify, but also such elemental rights as the presumption of innocence and proof beyond a reasonable doubt which are a distillate of the constitutional beneficences.

These considerations lead us to the conclusion that it will be to the advantage of the administration of justice in criminal cases to refine the principle applicable when the defendant's silence warrants comment in the trial court's charge. The objective is to prevent possible dilution of the force of the presumption of innocence and the possible confusion in the minds of the jurors as to the effect of the interplay of that presumption and the unfavorable inference which may be drawn from his silence. Accordingly, for future guidance we declare that in such instances the jury should be told that from the failure of the accused to testify they may infer that he could not truthfully deny the inculpatory *facts* adduced against him.

To complete the treatment of the problem, some reference must be made to the word "strong" in the context of such a charge. We have already observed that the words "raises" and "presumption" carry mandatory legal implications. So when "strong" appears in association with them, additional emphasis of an imperative nature is added. Thus the likely confusion in the minds of the jurors resulting from the comparative influence on their deliberations of the presump-

tion of innocence and the unfavorable presumption said to arise from the failure to deny the criminatory facts, would probably be increased by the emphasis added when the "presumption" is described as a strong one. The tendency may be to distort the proving power of the undenied facts.

However, since in the future the charge on the subject is to be limited to an expression of permissive inference, use of "strong" as descriptive of the character of the inference takes on a somewhat different color. The mandatory legal implications disappear and the word becomes simply an adjective describing the kind of inference the jury may draw. So inclusion or exclusion of the word becomes a matter for the discretion of the trial court, depending upon the circumstances of the particular case. If in his judgment in exercising his privilege of discussing the evidence, the stronger comment should be made, he will do so. Of course, such comment will not alter the basic problem for the jury, that is, whether the inference is to be drawn at all, and if so, what its effect should be on their ultimate finding of guilt or innocence. As has been indicated, the force of the inference depends upon the clarity and conclusiveness of the proof of guilt of the accused and upon his ability to deny those proofs, if not true. *State v. Callahan, supra,* 77 *N. J. L.* at *page* 686; *State v. Anderson, supra,* 137 *N. J. L.* at *page* 8; *State v. Wines, supra,* 65 *N. J. L.* at *page* 36.

A final aspect of the matter is worthy of mention. The cases demonstrate that the rule is applicable where there is direct evidence of facts showing defendant's participation in the crime, or where there is direct evidence of facts circumstantially implicating him. *State v. Rogers, supra,* 19 *N. J.* at *page* 236; *State v. Callahan, supra.* However, it has been said that where the inculpatory facts are purely circumstantial, comment on an accused's silence is improper. *State v. Friedman, supra; State v. Anderson, supra.* It is difficult to envision a case where the proof adduced by the State would be sufficiently incriminating to require the issue of guilt or innocence to be sent to the jury for determination and yet would not contain some such facts which he could

deny of his personal knowledge. To illustrate, even in *State v. Friedman,* where the charge was declared improper, a strong circumstance shown by the State was the finding of a slip of paper which had been tracked into the looted house by the intruder. The slip bore the typewritten legend "Nathan Frischer, 124 Gruman Ave., Newark, N. J.," and Frischer testified that he had left one such slip at Friedman's store and had given a second to another customer a short time before the commission of the crime. The uncontradicted proof established that on the day of the offense and within the time period when the breaking and entering occurred, Friedman had been working at a house two doors away. These factors would seem to be direct proof of facts circumstantially involving him which he could deny on the witness stand. This may be contrasted with *State v. Callahan* (77 *N. J. L.* at *page* 688) where the comment was sustained. And it should not be forgotten that long ago circumstantial evidence was recognized as frequently being more trustworthy, more forceful and more persuasive than direct evidence. *State v. Rogers, supra,* 19 *N. J.* at *page* 234; *State v. Goodman,* 9 *N. J.* 569, 581 (1952); *State v. O'Connor,* 134 *N. J. L.* 536, 539 (*Sup. Ct.* 1946). From an academic standpoint it may be sound to say that if the evidence is so wholly circumstantial as to admit only of a general denial of guilt by the defendant, the adverse implication should not be drawn. But as a practical matter, such a case is more supposititious than real, and care must be exercised so as not to deny the State the advantage of the charge where in justice it may be given.

The conviction is affirmed.

WEINTRAUB, C. J. (concurring). I join in the opinion of Mr. Justice FRANCIS except so much as authorizes a trial judge to charge that the inference which a jury may draw is a "strong" one.

I would suppose that if a judge charges that a "strong" inference may be drawn, he would have to add, to respect the jury's ultimate role, that it may however draw merely

an "ordinary," "mild," or "weak" one. I am not sure that I comprehend these degrees of inference when the issue is whether a jury may infer that a defendant cannot truthfully deny certain specific facts of the State's case. It seems to me that a trier of the facts either infers that a defendant cannot make the denial or does not so infer, and that there is no discernible role for the element of strength.

If the trial judge were authorized to express his opinion that the evidence *strongly* suggests that the jury should draw an unfavorable inference, I could understand the role that would be performed by the word I have italicized. The majority opinion does not authorize a trial judge thus to participate in the process of fact-finding. Yet I suspect that such would be the jurors' understanding of the charge which the opinion does approve. I could not agree that a trial judge may expressly so charge, and especially because a charge to that effect borders upon a statement that the trial judge believes the defendant to be guilty. We should not forget that the line drawn by our cases between what may be inferred (inability to deny specific facts) and what may not be inferred (guilt) is at best shadowy in its practical effect.

I envision a run of appeals questioning whether the circumstances of each case justified the trial judge's evaluation of the "strength" of the inference. What I cannot envision is a workable criterion. I assume that the touchstone should not be a judge's view as to a defendant's guilt. If this is so, what should the standard be? Unless we can see clearly some workable basis for this refinement, we are better off without it.

WEINTRAUB, C. J., and HEHER and WACHENFELD, JJ., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.